**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ROGER ERVIN,

    Plaintiff,

    v.

CORIZON HEALTH,
ASST. DIR. WILLIAM BEEMAN,
HOLLY PIERCE, RN PRACTITIONER,
MATTHEW CARPENTER, P.A.,
FRANK B. BISHOP, JR., WARDEN,
JEFF NINES, ASST. WARDEN,

    Defendants.

Civil Action No.: ELH-19-1666

**MEMORANDUM**

Counsel for the Division of Correction filed a response to this court's order to show cause why plaintiff Roger Ervin should not be granted injunctive relief. ECF 10. Shortly thereafter, Mr. Ervin filed an emergency motion for an injunction. ECF 12.[1] The court has also received a verified prison account statement from the finance officer at North Branch Correctional Institution ("NBCI") indicating that Mr. Ervin's account has a zero balance. ECF 11. His motion for leave to proceed in forma pauperis (ECF 5) shall therefore be granted.

No hearing is necessary. Local Rule 105.6. For the reasons stated below, Mr. Ervin's request for injunctive relief shall be denied, with the exception noted herein. Service of the Complaint shall take place in accordance with the accompanying Order.

---

[1] The motion raises new claims of retaliation. ECF 12. None of the defendants have been served. Therefore, the claim will be added to the complaint and defendants will be directed to respond.

## I. Background

Mr. Ervin filed a "Motion Status Report" on August 5, 2019 (ECF 7), indicating that medical staff at NBCI "are still stopping and starting" his medication requiring him to "go on hunger strikes to get any kind of treatment." *Id.* at 2. The medical care he requires for glaucoma includes "bilateral intraocular pressure checks" which, according to Mr. Ervin, have not occurred since September 20, 2017. *Id.* Mr. Ervin received eye surgery to relieve pressure in one of his eyes, and he states that he was told that he "would be able to see in four months." *Id.* When four months passed, Mr. Ervin still could not see. *Id.* He asserts that medical personnel have falsely maintained he has glaucoma in only one eye; attempted to convince "their own Opthalmologist Paul Goodman, MD" to also say the glaucoma was not bilateral; and ignored Dr. Goodman's directive of September 28, 2017, to have Mr. Ervin seen by an outside specialist. *Id.* at 2-3, ¶ 4. Symptoms Mr. Ervin was suffering at this time included "night blindness, seeing spots, . . . not being able to see at all sometimes . . . . eye pain . . . very bad headaches, and also white stuff coming out of his eyes, vision lost and cloudy visual total fields with blackout areas." *Id.* at 3, ¶ 5.

Mr. Ervin states that Dr. Goodman told him that "'the longer they wait the more of your sight you are going to lose. You are going to lose your left eye to save your right eye.'" *Id.* ¶ 6. Mr. Ervin implies that he has been denied care in retaliation for past actions filed in this court and was forced to file administrative remedies "and went into Court" to establish that he is visually impaired. *Id.* ¶ 7. Following an evidentiary hearing in State court, establishing that Mr. Ervin is "disabled," Mr. Ervin claims that "the Warden and his Subordinates [said], 'we are not going to

send you out until you are totally blind since you like telling the Court what is going on in our prison.'" *Id*. ¶ 8.

Counsel's response to the order to show cause is supported by both statements under oath and verified medical records. ECF 10. Asresahegn Getachew, M.D., who is the regional medical director employed by the contractual medical care provider for the Division of Correction, Corizon Health, Inc., provided a Declaration under oath discussing Mr. Ervin's past and current medical care for his glaucoma. ECF 10-3. Dr. Getachew explains that Mr. Ervin suffered an injury to his left eye prior to his incarceration, which caused traumatic glaucoma in that eye. *Id*. at 3, ¶ 7.[2] The traumatic glaucoma was surgically treated by Dr. Higginbotham before Mr. Ervin was incarcerated. *Id*. The procedure, trabeculectomy, "lowers the interocular pressure by making a small hole in the eye wall, covered by a thin trap-door in the sclera." *Id*. According to Dr. Getachew's review of Mr. Ervin's medical history, the procedure was effective in reducing the pressure in Mr. Ervin's left eye. *Id*.

Dr. Getachew states that Mr. Ervin was "monitored by ophthalmology and prescribed medications to treat glaucoma" during his incarceration, but in "late 2016, the trabeculectomy began to scar and his eye pressure increased." ECF 10-3 at 3, ¶ 8. To address the problem, Mr. Ervin was scheduled for another procedure in February of 2017 at Bon Secours Hospital for placement of an "Ahmed tube shunt" in his left eye. *Id*. Dr. Summerfield was the doctor providing care to Mr. Ervin. The purpose of the shunt was to "allow drainage of excess fluid in the eye," which is reabsorbed by the body. *Id*. Mr. Ervin declined the surgery and was returned to NBCI and prescribed "the maximum dosage of medication to control his eye pressure." *Id*. The

---

[2] "Glaucoma is a group of eye conditions that cause increased pressure within the eye, referred to as ocular hypertension, and can cause damage to the optic nerve and ensuing vision loss." ECF 10-3 at 2, ¶ 6.

medication was not effective in controlling the pressure in Mr. Ervin's eye, but he continued to refuse the surgery until June of 2017. *Id.* ¶ 9. By the time Mr. Ervin consented to the surgery he had "lost significant central vision in his left eye." *Id.*

Dr. Summerfield performed the surgery to Mr. Ervin's eye, which successfully reduced the pressure in his left eye. ECF 10-3, ¶ 10. On August 23, 2017, an examination of Mr. Ervin's eye revealed that the surgically implanted tube was exposed, representing a "possible conduit to allow infection into the eye." *Id.* At the time this was discovered, Mr. Ervin had not yet developed an infection in his eye. But, due to the risk of one, Mr. Ervin was scheduled for revision of the procedure on September 20, 2017, to be performed by Dr. Goodman. *Id.*, ¶¶ 10, 11.

In preparation for the surgery at Bon Secours Hospital, Mr. Ervin was examined by Dr. Ashraf at NBCI, who noted the following chronic conditions: "glaucoma; blepharitis, (inflammation of the eyelids); and conjunctivitis (inflammation or swelling of the conjunctiva of the eyes)." ECF 10-3 at 4, ¶ 11. The day before the scheduled surgery, Mr. Ervin was transferred to Jessup Correctional Institution ("JCI"), but Mr. Ervin again refused to undergo surgery. *Id.* ¶ 12. Mr. Ervin was advised of the negative effects his refusal could have, including infection and loss of vision, but he was unpersuaded. *Id.* The exposed shunt was instead covered temporarily, an "early refill" of ophthalmologic eye drops was requested, and he was transferred back to NBCI on September 21, 2017. *Id.* ¶ 13.

When Mr. Ervin reported pain in his left eye on September 27, 2017, Dr. Ashraf prescribed Ultram, a narcotic pain medication, to address the pain. *Id.* at 4-5, ¶ 14. In addition, Mr. Ervin was prescribed "brimonidine tartrate 0.2% ('Alphagan'); dorzolamide HCL/timolol maleate ('Cosopt'); . . . latanoprost ophthalmic 0.005 % ('Xalatan') . . . [and] also received moxifloxacin HCL, 0.5% ('Vigamox') to address bacterial conjunctivitis" prophylactically. *Id.* ¶ 15.

Based on Mr. Ervin's refusal to consent to surgery, Dr. Goodman made a recommendation that Mr. Ervin should be referred to an outside glaucoma specialist. *Id*. ¶ 16. On October 11, 2017, Dr. Goodman examined Mr. Ervin and noted the tube exposure remained unchanged and that Mr. Ervin was still awaiting a referral to an outside glaucoma specialist. *Id*. ¶ 17. Meanwhile, Dr. Goodman recommended that Mr. Ervin continue to take medications to control the glaucoma. *Id*. Later that month, Mr. Ervin was given a full year's prescription for Vigamox, the prophylactic antibiotic prescribed to protect his eyes from infection due to the exposed tube. *Id*.

Mr. Ervin injured his back in late 2017 or early 2018. ECF 10-3 at 6, ¶ 19. Mr. Ervin was seen on November 21, 2017, by Holly Pierce, CRNP, for his complaint of lower back pain. ECF 10-4 at 233. He told Ms. Pierce that he "had two discs removed in 2016" and that it was his understanding that "Ultram, Baclofen and Neurontin should never be stopped for any reason." *Id*. When Ms. Pierce attempted to discuss the indications for each of the medications mentioned, Mr. Ervin became angry and said, "you will hear from my lawyer." *Id*.

On April 8, 2018, Mr. Ervin again reported experiencing lower back pain that interfered with his ability to walk. ECF 10-4 at 224-5. He was examined by Ms. Pierce, who noted that Mr. Ervin was requesting "Neurontin and Ultram or a wheelchair" for treatment of his back pain. *Id*. at 224. Ms. Pierce prescribed warm compresses, lower back exercises and stretches, Celebrex and Capsaizin. *Id*. at 225. In addition, Ms. Pierce put in an order for an x-ray of Mr. Ervin's lower back. *Id*.; *see also id*. at 226 (X-ray requisition form). The x-ray was performed two days later and revealed "mild degenerative changes at multiple levels in [Mr. Ervin's] lumbar spine." *Id*. at 229.

On June 12, 2018, Mr. Ervin was seen in his cell[3] by Regina Lease, RN, after correctional officers called on his behalf because the conjunctiva in both eyes were excessively red. ECF 10-4 at 221. At that time, Mr. Ervin acknowledged that the tube in his left eye needed to be fixed and stated he could only see shadows. *Id.* Ms. Lease referred Mr. Ervin for an "optical reevaluation" and noted that Mr. Ervin was "in stable condition in his cell." *Id.*

An optometry appointment was scheduled on July 25, 2018, with a plan to perform retinal photography to assess both the health of Mr. Ervin's eye and the optic nerve. ECF 10-3 at 6, ¶ 20. Mr. Ervin "refused his appointment" (*id.*), but did not sign the release of responsibility form ("ROR") indicating that refusal. ECF 10-4 at 10 (indicating at "Inmate Signature" that Mr. Ervin "did not come to sign").

On September 15, 2018, Mr. Ervin was again referred for an ophthalmology exam because he reported seeing only shadows. ECF 10-3 at 6, ¶ 21; ECF 10-4 at 215. A note on the referral indicates Mr. Ervin's name should be placed on the next list. ECF 10-4 at 215.

On October 10, 2018, Mr. Ervin was offered an ophthalmology appointment, but refused to attend the appointment. ECF 10-3 at 6, ¶ 22, *see also* ECF 10-4 at 9 (ROR indicating Mr. Ervin "refused to sign"). Mr. Ervin also declined another appointment on October 18, 2018. ECF 10-3 at 6, ¶ 23; ECF 10-4 at 8 (ROR with a signature).

Mr. Ervin was seen by Ms. Pierce on October 25, 2018, for complaints of lower back pain that radiated bilaterally to his legs. ECF 10-4 at 202. Ms. Pierce noted that Mr. Ervin "was able to walk to medical and sit up on the exam table without difficulty" and that he voiced dissatisfaction with his current pain management plan, indicating he preferred to be prescribed

---

[3] Dr. Getachew's Declaration erroneously notes that Mr. Ervin was "brought to the health unit." ECF 10-3 at 6, ¶ 20.

Neurontin. *Id*. Ms. Pierce referred Mr. Ervin for examination by an "MD" for pain management. *Id*. at 203.

Mr. Ervin declined to attend another ophthalmology appointment on November 7, 2018. ECF 10-3 at 7, ¶ 25; ECF 10-4 at 7 (ROR with signature). Mr. Ervin then went on a hunger strike, prompting an evaluation by Ms. Pierce on November 15, 2018. ECF 10-4 at 194. At that time, Mr. Ervin was prescribed Celebrex for his back pain, but he indicated he no longer wished to take the medication because his mother told him it was contraindicated for patients with bad sinuses. *Id*. He also told Ms. Pierce that when he was seen by ophthalmology the doctor recommended "pain medication for his eye condition" and that he was told by the ENT specialist he should have pain medication for nasal polyps. *Id*.

According to Mr. Ervin, he is required to remain on the following medications for the rest of his life: Neurontin, Baclofen, Ultram, and Nasacort. *Id*. Ms. Pierce noted that the opthalmologist had recommended surgery, not pain medication, and the ENT had prescribed "sinus rinse with saline solution and Augmentin" for 10 days to treat Mr. Ervin's chronic sinusitis. *Id*. There is a notation that Mr. Ervin became argumentative during the appointment, resulting in termination of the visit. *Id*. Mr. Ervin continued his hunger strike, maintaining he should be prescribed the specific pain medications given to him in the past. ECF 10-3 at 7, ¶ 27; ECF 10-4 at 190 (Nov. 19, 2018: states "he would not eat until he went to court because his medications were taken away"), *id.* at 178 (Nov. 22, 2018, "protesting the fact that his medications were taken away").

On November 27, 2018, Mr. Ervin indicated he was willing to end his hunger strike but that he wanted medication for his back pain with radicular pain to both his legs. ECF 10-4 at 168.

After discussing pain management options with Mr. Ervin, Ms. Pierce indicated that he was agreeable to a prescription for Cymbalta to address his pain. *Id.*

On January 7, 2019, Mr. Ervin was placed in the "TCC program" described as a "structured in-cell treatment program designed to provide inmates with the opportunity to participate in psychoeducational programming." ECF 10-3 at 8, ¶ 29. Participation in the program required moving Mr. Ervin to the behavior health segregation unit for monitoring. *Id.* Neither the specific goal of the program nor the basis for Mr. Ervin's placement in the program is explained.

On February 15, 2019, Mr. Ervin was seen by Lauren Beitzel, LCPC, at his request. ECF 10-4 at 158. During this visit Mr. Ervin expressed concern over his worsening eyesight and indicated that he needed a "cane or wheelchair and pain medications" for his back pain; he wanted a handicapped-accessible cell due to his poor eyesight and back pain; and explained that climbing stairs was painful for him. *Id.* At that time, Mr. Ervin had a "court hearing" scheduled for the following month regarding his need for accommodation. *Id.*

Mr. Ervin began another hunger strike on July 4, 2019. He was seen in his cell by Janette Clark, NP, two days later. ECF 10-4 at 123. Mr. Ervin told Ms. Clark that he was no longer taking Cymbalta because he felt it was not something that should be prescribed for someone with glaucoma. *Id.* Dr. Getachew states that Cymbalta is not contraindicated for traumatic glaucoma. ECF 10-3 at 8, ¶ 32.

Later that day, Mr. Ervin discussed the reasons for the strike with Kimberlie Ventura, RN, who spoke to Mr. Ervin at his cell door. ECF 10-4 at 120. Mr. Ervin stated he was on a hunger strike "because of my back pain and needing some pain medicine to help me." *Id.* Ms. Ventura noted that Mr. Ervin seemed to have no difficulty walking from his bed to the door and back again. *Id.* Because Mr. Ervin had reported to Ms. Clark that he was not receiving his eye drops (ECF 10-

4 at 123), Ms. Ventura provided Mr. Ervin with the eye drops to keep with him and self-administer. *Id*. at 120.

Ms. Clark saw Mr. Ervin again on July 7, 2019, in the Housing Unit medical room, because he remained on a hunger strike. ECF 10-4 at 115. Mr. Ervin was brought to the room by correctional staff via wheelchair. *Id*. Ms. Clark noted that Mr. Ervin "was able to stand while cuffed behind his back with minimal effort," that he reported he was "still working out," and that he had "well defined bilateral arms, shoulders, chest and back," all of which "contradicts what he had said . . . about not being able to walk." *Id*. Ms. Clark told Mr. Ervin she had put in a consultation request for him to receive physical therapy as was discussed the day before; Mr. Ervin indicated he was agreeable to participating in physical therapy. *Id*. Mr. Ervin then informed Ms. Clark "that the ophthalmologist lied to him and he will not under any circumstance allow that ophthalmologist to remove the shunt in his eye." *Id*. He also requested an ADA compliant housing assignment due to his visual impairment and told Ms. Clark she should not just order bottom bunk, bottom tier, but she would have to write "vision impaired" in order to "protect [her] license." *Id*.

In his "Emergency Motion" filed with the court on September 16, 2019, Mr. Ervin states he is "seeking psychological help and medical emergency needs." ECF 12 at 1. He alleges he was placed in segregation for a "bogus ticket" in retaliation for going to court and receiving an order requiring accommodation for his disability. *Id*. at 1-2, ¶ 3. He complains that he is not receiving pain medications, only eye drops, and states he still needs "further surgery on [his] eyes and they keep lying to [him] about scheduling it." *Id*. at 2, ¶ 4. He adds that he is not being seen for sick call requests (*id.*), has been assigned to the mental health tier in retaliation for filing an action in court (*id*. at ¶ 6), and has not been given a job or allowed to go outside to exercise. *Id*. ¶ 7. Attached to the motion is an order from the District Court for Baltimore City dated March 6, 2019, ordering

that Mr. Ervin be "afforded all rights and privileges appertaining thereto to accommodate him due to his visual impairment." ECF 12-1 at 9.[4] `

The injunctive relief Mr. Ervin requests in his emergency motion is an order requiring staff to provide him with a wheelchair; his transfer to another facility, such as Patuxent or Maryland Correctional Training Center, where he can be accommodated as a blind, disabled inmate; glaucoma surgery to be done within 90 days to preserve the vision in his "deteriorating right eye;" and renewal of his pain medications. ECF 12 at 3-4.

## II. Standard of Review

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren,* 553 U.S. 674, 689–90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).

As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

---

[4] The Baltimore City District Court ultimately dismissed Mr. Ervin's complaint after he failed to comply with a court order requiring him to name an expert. *See Ervin v. Wexford Health Source, Inc.*, Case 010100162882018 (Balt. City D. Ct. 2018) at http://casesearch.courts.state.md.us/inquiry (last viewed Sept. 19, 2019).

## III.    Discussion

The evidence before me indicates that nobody involved in Mr. Ervin's glaucoma care disagrees that he needs corrective surgery and that the danger of not having that surgery is development of an infection to his left eye.  There appear to be adequate measures in place to prevent such an infection.  Mr. Ervin has, however, declined to undergo corrective surgery for the shunt in his left eye, purportedly because he does not want it performed by Dr. Summerfield or Dr. Goodman.  It is equally clear that Mr. Ervin was referred to an "outside glaucoma specialist" but has not been seen by such a specialist.  *See Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014) (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).  What is not entirely clear is the rationale for Mr. Ervin's apparent continued refusal to attend ophthalmology appointments for the purpose of assessing the condition of his optic nerve.

Initially, it appeared that Mr. Ervin was declining appointments because of his difficulty walking long distances.  However, it appears from at least some of the medical records provided that Mr. Ervin has in the past been brought to the medical unit in a wheelchair.  Therefore, I am reluctant to issue an order requiring Mr. Ervin's assessment, given his past refusals of offered ophthalmology appointments.  Although there is an admitted possibility of harm befalling Mr. Ervin if he continues to refuse the surgery, there is no indication that the medical care providers at NBCI are refusing to provide a needed medical procedure.  Indeed, Dr. Getachew states in his Declaration under oath that Mr. Ervin will receive the revision surgery when he consents to it.  ECF 10-3 at 9, ¶ 34(a).  Further, Mr. Ervin continues to be referred to the ophthalmologist for regular evaluation of his condition, despite his past refusals to attend such appointments.  *Id*. at 10 ¶ 34(c).

Given the evidence before me, it does not appear that Mr. Ervin is being denied care for his glaucoma. Rather, he is simply declining the care that has been offered. The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*" *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (emphasis added) As such, he is not entitled to an injunction requiring eye surgery in 90 days.

However, given that all parties agree that Mr. Ervin's eyesight is in jeopardy, and there has been a significant period of time that has passed since his last eye exam, I will grant injunctive relief to require that Mr. Ervin receive an appropriate eye exam to address his eye issues. In the event Mr. Ervin refuses to attend such an appointment, counsel is directed to provide evidence of that refusal beyond the ROR forms that do not bear Mr. Ervin's signature. Such evidence may include video recordings (with sound) or declarations under oath by more than one witness who hears and/or sees Mr. Ervin's refusal.

Mr. Ervin's request for this court to order reinstatement of his pain medication prescriptions, a transfer to another prison, and to provide him with a wheelchair (ECF 12 at 3-4) are unsupported by the record. Mr. Ervin has been counseled repeatedly regarding pain management and has exhibited no objective signs that his back pain negatively affects his ability to walk. His reported insistence that he was told he would need to be on pain medications for the rest of his life is unsupported by any discernible facts subject to objective proof. It is not the role of this court to make independent medical judgments or to determine the proper course of care for chronic pain. *See Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (defining a serious medical need as one that has been acknowledged by a physician as mandating treatment).

The failure to provide Mr. Ervin with the pain medications of his choice does not warrant the injunctive relief sought given the objective evidence provided. Further, Mr. Ervin's conclusory statement that he requires a transfer to one of the prisons he suggests so that his disability may be accommodated lacks any allegation that he otherwise qualifies for such a transfer and there is no possibility for accommodation at NBCI where he is now confined.

The balance of equities do not tip in Mr. Ervin's favor where there is evidence that the only reason he has not received the surgery he requires is his own refusal to have the surgery and to attend appointments for evaluation of his eyes. Further, Mr. Ervin is not likely to succeed in his claims against the medical defendants, as it is his continuing disagreement with medical care professionals that appears to be the sole basis for his claims against them. For the reasons noted, Mr. Ervin's requests for injunctive relief shall be denied.

Service of the complaint as to the correctional officials named as defendants shall take place as set forth in the accompanying Order. Mr. Ervin will be granted a brief amount of time to show cause why his claims against the named medical defendants should not be dismissed in light of this court's decision denying injunctive relief.

A separate Order follows.


September 23, 2019                                   /s/
Date                                        Ellen L. Hollander
                                            United States District Judge