**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ROGER ERVIN,

    Plaintiff,

v.                                                     Civil Action No.: ELH-21-2386

CORIZON HEALTH,
MATTHEW CARPENTER, P.A.,
ASRESAHAGN GETACHEW, M.D.

    Defendants.

---

ROGER ERVIN,

    Plaintiff,

v.                                                     Civil Action No.: ELH-19-1666

CORIZON HEALTH,
WILLIAM BEEMAN, Assistant Director,
HOLLY PIERCE, R.N.,
MATTHEW CARPENTER, P.A.,
WARDEN FRANK BISHOP, JR.,
JEFFREY NINES, Assistant Warden

    Defendants.

**MEMORANDUM**

    Civil Action ELH-21-2386 ("*Ervin II*") was opened on September 17, 2021, after plaintiff Roger Ervin filed a document in Civil Action ELH-19-1666 ("*Ervin I*"), requesting issuance of a temporary restraining order. *See Ervin I*, ECF 68. But, *Ervin I* is a closed case. *See Ervin I, Ervin*

*v. Corizon Health, et al.*, Civ. Action ELH-19-1666. Therefore, I issued an Order in *Ervin I*, directing the Clerk to docket the motion as a new complaint, *i.e. Ervin II*.[1]

Since *Ervin II* was opened on September 17, 2021, Mr. Ervin has filed additional documents in the closed case, seeking to revisit this court's decision in *Ervin I,* in which I ruled in favor of the defendants. He asserts that newly discovered evidence supports his contention that he did not receive appropriate medical care for his glaucoma.

For the reasons that follow, Mr. Ervin's request for injunctive relief shall be denied; his pending motion in *Ervin I* shall be denied; and Mr. Ervin will be granted the opportunity to file an amended complaint in *Ervin II*, provided any claims he raises are claims that were not already considered and resolved in *Ervin I* and involve events occurring after May 13, 2020.

## I. Background

**A.**   *Ervin I* **(ELH-19-1666)**

In *Ervin I*, by a Memorandum Opinion and Order dated May 13, 2020, this court granted defendants' motion to dismiss or for summary judgment. *See* ECF 59, ECF 60. Mr. Ervin filed a motion for reconsideration on May 29, 2020 (ECF 61), which this court denied on October 21, 2020. ECF 64; ECF 65. Mr. Ervin did not file an appeal.[2]

In *Ervin I*, Mr. Ervin's requests for injunctive relief were denied, except for the requirement that Mr. Ervin receive an appropriate eye exam for his glaucoma. *Ervin I*, ECF 13 at 12. This court also observed: "In the event Mr. Ervin refuses to attend such an appointment, counsel is

---

[1] The Order directed the Clerk to open a new civil action listing the defendants as Corizon Health; Matthew Carpenter, P.A.; and Asresahagn Getachew, M.D. The docket in ELH-21-2386 does not list the proper defendants; the Clerk will be directed to correct the error.

[2] On October 16, 2019, Mr. Ervin had filed an interlocutory appeal challenging the denial of preliminary injunctive relief. *Ervin I*, ECF 23. The appeal was dismissed by the Fourth Circuit on January 6, 2020, for failure to prosecute. *Id*. at ECF 45; ECF 46.

directed to provide evidence of that refusal beyond the ROR forms that do not bear Mr. Ervin's signature. Such evidence may include video recordings (with sound) or declarations under oath by more than one witness who hears and/or sees Mr. Ervin's refusal." *Id.*

Mr. Ervin received the required ophthalmology consultation on September 23, 2019, at Johns Hopkins Hospital. *Ervin I*, ECF 25. Notwithstanding that compliance with the court's Order, Mr. Ervin again sought injunctive relief. *Id.*, ECF 27. Mr. Ervin's request for injunctive relief was denied on October 25, 2019. *Id.*, ECF 28; ECF 29. The court said, in part, ECF 28 at 4:

> With regard to Mr. Ervin's repeated requests for injunctive relief, the basis of which has already been addressed by this court, his requests are denied, without prejudice. Mr. Ervin is reminded that this court cannot intervene on his behalf each time a disagreement arises regarding his medical care or his housing assignments. To the extent ordered medications have not been delivered, he feels unsafe in his current housing assignment, or he is experiencing the same pain he has described as an ongoing issue, those allegations have been raised in the complaint and will be addressed by all defendants after service has been effectuated. At this time, and in light of the evidence before me, as stated in my Memorandum of September 23, 2019 (ECF 13), the request for injunctive relief is denied.

Thereafter, on May 13, 2020, the court ruled in favor of the defendants. ECF 59, ECF 60. In granting summary judgment in favor of the medical defendants named in Mr. Ervin's Complaint, this court observed: "Mr. Ervin's decisions to forego recommended treatment, against the advice of every physician he has seen, has been the primary cause for delays in his treatment." *Id.*, ECF 59 at 40.

Then, on September 15, 2021, plaintiff filed a "Motion [For] Newly Discovery [sic] Evidenc[e]." ECF 68 (the "Motion"). Plaintiff seeks review under Fed. R. of Civ. P. 59(e). *Id.* at 1-3. The Motion is supported by exhibits.

3

Plaintiff erroneously states that this court previously "order[ed] surgery" for his eye on November 14, 2019, at the Wilmer Eye Institute at Johns Hopkins Hospital. *Id*. at 4. And, he claims that, despite this alleged order, he "had to wait for two years from . . . ." *Id*. It is Mr. Ervin's apparent understanding that he was supposed to return to Johns Hopkins three weeks after November 14, 2019. *Id*. Further, plaintiff claims that Dr. Alesha Spellman-Smith saw him on October 3, 2020, and said that he needed to return to Johns Hopkins on an emergency basis because both of his eyes were swollen and they needed to be drained. *Id*. He claims he was seen by Dr. Getachew shortly after he saw Dr. Spellman-Smith and that Dr. Getachew told him he was not an expert. *Id*.

When Mr. Ervin was seen by Dr. Amy Green-Simms, he claims she told him the same thing: that he needed to go back to Johns Hopkins on an emergency basis to have his swollen eyes drained. *Id*. at 5. Mr. Ervin states that he has been told by the ophthalmologists and optometrists he has seen that he might lose his left eye to save his right eye. *Id*. at 5.

Mr. Ervin acknowledges that he was taken to Johns Hopkins for an eye exam on May 18, 2021. He recalls that he was told that he needed surgery urgently "to close that area up" and that the doctors said that they "wouldn't have remove[d] that tube if we knew it was going to take two years to bring you back." *Id*. at 5. Further, he claims that he was told that he might lose sight in both eyes as a result of the surgery. *Id*.

Mr. Ervin does not explain if a procedure was performed on his eye, but he states that in June 2021 he returned for a follow up exam and that he "was not doing well at that time." *Id*. According to Mr. Ervin, he was supposed to return on July 28, 2021, "for more testing to see if [his] left eye could be removed without too much damage to the right eye." *Id*.

Further, Ervin accuses Dr. Getachew of lying because he said he was not an expert and has not ensured that Ervin has received reasonable accommodation for his disability. *Id*. at 6. Mr. Ervin states that the reasonable accommodation he seeks is a transfer from North Branch Correctional Institution ("NBCI") to Roxbury Correctional Institution ("RCI"), where he believes he will be provided with specific services designed for inmates with visual impairment. *Id*. at 6-7. Ervin references a State court order requiring his disability to be accommodated and blames Nurse Practitioner Holly Hoover for providing her professional opinion that Mr. Ervin's vision is good enough for him to remain at NBCI. *Id*. at 8-9. Ervin also seemingly takes umbrage with the Parole Commission's decision not to grant him parole based on his visual impairment. *Id*. at 9.

In addition, Mr. Ervin claims that Dr. Getachew lied to this court when he said Mr. Ervin was receiving pain medication, but also states that "they put him in for pain management [in] 2018." *Id*. at 10. He further states he has been receiving Baclofen (20mg) and Carbamazepine (200mg), was given "wheelchair papers" early in the year, given a pass to use the handicap shower, and sent to Johns Hopkins on May 18, 2021. *Id.* Based on all of these allegations, Mr. Ervin seeks to recover monetary damages from Matthew Carpenter, P.A. and Dr. Getachew. *Id*. at 11.

As mentioned, the Motion was filed on September 15, 2021, almost one year after judgment was entered in favor of defendants. It may not be considered under Rule 59(e). "[A] motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was filed no later than [28] days after entry of the adverse judgment and seeks to correct that judgment." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 412 (4th Cir. 2010) (citing *Small v. Hunt*, 98 F.3d 789, 797 (4th Cir. 1996)); *see also Vaughan v. Murray,* No. 95-6081, 1995 WL 649864, at *3 n. 3 (4th Cir. Nov.6, 1995).

5

Rule 60 permits relief from a judgment or order of this court in order to correct clerical mistakes, oversights, and omissions. Fed. R. Civ. Proc. 60(a). A party may also be granted relief from judgment on motion for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, release or discharged; (6) any other reason that justifies relief. Fed. R. Civ. Proc. 60(b).

It is within this court's discretion to grant or deny a motion filed pursuant to Rule 60(b). *See Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir. 1993). The rule does not contemplate its substitution for appellate review of a district court's decision. To the extent a party is aggrieved by a judgment and asserts it is void, Rule 60(b) is not the proper vehicle to mount that challenge. "'[A] judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861, 871 (4th Cir. 1999) (quoting *Schwartz v. United States,* 976 F.2d 213, 217 (4th Cir.1992)) (quoting 11 Wright & Miller, *Federal Practice and Procedure* § 2862 at 198-200 (1973)).

To be entitled to relief under Rule 60(b), the movant must demonstrate the existence of a meritorious claim or defense. *See Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979). When the motion is based on assertions of fraud, misrepresentation, or misconduct, the movant "must also prove the misconduct complained of by clear and convincing evidence and demonstrate that such misconduct prevented him from fully and fairly presenting his claim or defense." *Square Const. Co. v. Washington Metropolitan Area Transit Authority*, 657 F.2d 68, 71 (4th Cir. 1981).

Mr. Ervin's Motion does not set forth any plausible evidence that a fraud was committed on this court by any of the defendants or medical staff who provided supporting declarations for the purpose of securing a judgment in their favor. Rather, Mr. Ervin's Motion is simply a continuation of the arguments he made during the litigation of his claims in *Ervin I*. There is no evidence of misconduct preventing Mr. Ervin from fully and fairly presenting his claims to this court. Therefore, the Motion shall be denied.

**B.**   *Ervin II* (**ELH-21-2386**)

Mr. Ervin has moved for a temporary restraining order. ECF 1 ("TRO Motion"). He recapitulates the underlying facts of his civil rights complaint, states that he filed an action in State court against the medical care providers involved with his case, and adds more recent developments in the course of his care for glaucoma. *Id.*

Ervin advises that he filed a lawsuit in State court after his federal claims were dismissed on summary judgment and claims his case sat for a year, that it is going to be dismissed, and he wants to withdraw it, without prejudice, and bring his claims back to this court. *Id.* at 2, ¶ 1; ECF 1-2 at 1 (notice of dismissal for lack of jurisdiction issued by Circuit Court for Baltimore City). He denies ever refusing to consent to surgery, despite evidence produced during the course of the prior case that he did in fact refuse the surgery that had been offered. ECF 1 at 6-7; *see also Ervin I*, ECF 42-2 at 5, 358, 360, 361.

Ervin alleges that, due to a two-year delay in receiving surgery needed for his eye, he has now been informed by providers at the Wilmer Eye Clinic at Johns Hopkins Hospital that he will lose his left eye because the pressure in his eye is so high. ECF 1 at 6, 7-8. Further, he claims that the ophthalmologist at Johns Hopkins told him that it is not Mr. Ervin's fault that he did not receive the surgery and that appointments that occur at the prison cannot include a surgical evaluation. *Id.*

at 8. Mr. Ervin states that the Johns Hopkins provider told him that "them saying you refused treatment & their never send you to a surgery [sic] is a lie." *Id*. Mr. Ervin also recalls that the ophthalmologist at Johns Hopkins said they would have never removed the tube from his eye if they had known it would take two years for him to return. *Id*.[3]

According to Mr. Ervin, Dr. Getachew "blatantly lied" to this court when he said that Mr. Ervin was on a mental health tier, and he complains that the other inmates on the tier constantly yell and rarely bathe. ECF 1 at 9. He also complains that his poor vision is preventing him from completing paperwork needed to receive his economic stimulus checks and he has not received reasonable accommodation for his disability, despite having received a State court order requiring same. *Id*.

Mr. Ervin attaches medical records to his TRO Motion, bearing dates in 2016 and 2017, which concern his chronic sinusitis. ECF 1 at 4-5 and 9-11. Additionally, the records include assignments for wheelchair use for one year and use of a handicap shower for one year; each assignment ends early next year. *Id*. at 7-8. All of the medical records filed with the TRO Motion were previously considered by this court when ruling in defendants' favor in *Ervin I*.

As relief, Mr. Ervin seeks an order requiring Corizon providers not to interfere with orders from outside doctors; placing "a hold on all surgery" until this court appoints an attorney to represent Mr. Ervin and his pending State litigation is withdrawn; prohibiting all defendants from discriminating against Mr. Ervin, in violation of Title II of the Americans with Disabilities Act;

---

[3] This court takes judicial notice of the fact that most routine doctor appointments did not take place during the pandemic lockdown that began in March 2020. For quite some time, only emergency surgeries occurred. The court may also take judicial notice of its own records and other matters of public record. *See United States v. Bohl*, No. DKC-16-0484 (D. Md. 2016); Fed R. Evid. 201 (allowing a court to take judicial notice of facts not subject to reasonable dispute).

requiring Mr. Ervin's transfer to RCI, where his visual impairment can be accommodated; requiring defendants to pay all court costs; requiring prison medical providers to put Mr. Ervin "back on all his medications;" requiring medical providers to send Mr. Ervin out on a writ for an MRI of his back and face; and requiring medical providers to check with the court before any medication for Mr. Ervin is removed. ECF 1 at 9-12.

Mr. Ervin's request for injunctive relief seeks to revisit the claims raised in *Ervin I*, which have been addressed extensively by the parties and by this court. Additionally, Mr. Ervin seeks to involve this court in decisions regarding his medical care, an invitation this court has previously declined.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), *see also SAS Institute, Inc. v. World Programming Lmtd*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be."). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). Section 3626(a)(2) of 18 U.S.C. states:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

Mr. Ervin's request for injunctive relief fails because he cannot demonstrate a likelihood of success on the merits. As noted, Mr. Ervin's claims that he has been denied appropriate medical treatment for his glaucoma, in violation of his Eighth Amendment rights, have already been litigated and the court ruled in favor of the defendants.

Further, Mr. Ervin's requested relief is not narrowly tailored to address what he perceives is the need for preliminary injunctive relief. As this court has repeatedly advised Mr. Ervin, the decisions regarding his health care do not and should not involve this court's opinion. An Eighth Amendment claim is not stated where, as here, there is simply disagreement between the prisoner plaintiff and his health care providers. Mr. Ervin's view that he requires a transfer to RCI so that his visual impairment can be addressed is unsupported by any objective evidence; rather, this appears to be based solely on his opinion. Therefore, the request for injunctive relief shall be denied.

Nevertheless, Mr. Ervin will be granted an opportunity to file an amended complaint using 1983, forms which the Clerk will provide to him. If Mr. Ervin chooses to file an amended

complaint, he is cautioned that the court will only consider claims regarding events that have occurred since May 13, 2020. In other words, any claims that were already considered by this court in *Ervin I* will not be revisited under the guise of a new case. Mr. Ervin is also forewarned that failure to file an amended complaint will result in dismissal of this case, without further notice, and without prejudice.

    A separate Order follows.

October 1, 2021  /s/
Date  Ellen L. Hollander
  United States District Judge